**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| BONNIE ZEPHRINE, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. AW-02-1796 |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \*

**MEMORANDUM OPINION**

This suit arises out of the death of Charles Huddleston, Jr. ("Huddleston" or the "Decedent"). Plaintiffs Bonnie Zephrine and Charles Ivy Huddleston, Sr.[1] ("Plaintiffs"), as the natural parents and personal representatives of Decedent's Estate, bring this suit against Prince George's County, Maryland ("PGCM") and PGCM Police Officer George Nichols, PGCM Police Officer David McDonald, PGCM Police Officer David Levin, PGCM Police Officer Joseph Brooks, PGCM Police Officer Crandell Weaver, PGCM Police Officer Thomas Warren, PGCM Police Officer Edward Gesser, PGCM Police Officer John M. Calhoon, PGCM Police Officer James Kline, and PGCM Police Officer Michael Economes (collectively, "Defendant Officers"), as well as the Town of Morningside, Joel Brickell, a police officer from the Town of Morningside, Thomas Clabby ("Clabby), an Emergency Medical Service provider, Southern Maryland Hospital Center, Dr. Patricia Melton, and Larsen Jones Associates, P.C. On April 24, 2002, Plaintiff filed a complaint against the listed defendants, alleging wrongful death, excessive force, *Monell* claims, medical malpractice, and various state tort actions. Currently pending before the Court is Defendant

---

[1] Plaintiffs have stated that Decedent may have one son, Alexander Anderson. If a paternity test indicates that Decedent fathered Alexander Anderson, Plaintiffs state that Alexander Anderson will also be a plaintiff in this suit.

Officers, Clabby, and PGCM's Motion to Bifurcate and Stay Discovery [192]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set forth in more detail below, the Court will grant this motion with respect to the *Monell* claims.

## FACTUAL & PROCEDURAL BACKGROUND

On or about April 26, 1999, at 9:00 p.m., police officers from PGCM and the Town of Morningside observed Huddleston in a vehicle in a parking lot across from Andrew's Air Force Base. The officers followed Huddleston as he exited the parking lot and ultimately apprehended Huddleston at or near the Andrews Manor Theater in Prince George's County, Maryland. The Fourth Amended Complaint ("Amended Complaint") alleges that some of the officers involved in the apprehension "maliciously, sadistically and cruelly" beat Huddleston and that the other officers looked on and did not stop the abuse. The officers at the arrest scene placed Huddleston in restraints, and the Amended Complaint alleges that officers continued to beat Huddleston despite the fact that he was in restraints. Amend Compl. ¶¶ 36-37.

Due to his injuries, Huddleston required medical attention, and, at some point, Emergency Medical Services ("EMS") personnel were summoned. The EMS personnel transported Huddleston to Southern Maryland Hospital Center, arriving at the hospital at approximately 10:25 p.m. While at the hospital, Huddleston remained in police custody and was retrained by "tuff-cuffs" around his wrists and ankles. The Amended Complaint also avers that a sheet was placed over his head and at least one other sheet was tied around his body. Amend. Compl. ¶ 43. Huddleston had trouble breathing, and as a result of a blockage in his airway, Huddleston died of hypoxia and/or asphyxia.

Plaintiffs filed this suit on April 24, 2002. Plaintiffs' Amended Complaint alleges federal

Case 8:02-cv-01796-AW   Document 203   Filed 11/15/05   Page 3 of 6

claims under 42 U.S.C. § 1983 of excessive force, deprivation of the Decedent's constitutional rights, and *Monell* claims and alleges state claims under the Maryland Wrongful Death Statute, Md. Code Ann., Cts. & Jud. Proc. §§ 3-901 to 3-904 (2005), the Maryland Survival Act, Md. Code Ann., Cts. & Jud. Proc. § 6-401 and Md. Code Ann., Est. & Trusts § 7-401(x), and the Maryland Constitution.

On August 30, 2005, Defendant Officers, Clabby, and PGCM filed the instant Motion to Bifurcate and Stay Discovery, urging this Court to bifurcate this proceeding so that the issue of liability as to the Defendant Officers and Clabby initially would be resolved in one trial and any viable claims against PGCM would be resolved in a second trial. In addition, the Motion requests this Court stay discovery concerning the liability of PGCM. As this motion is ripe and ready for disposition, the Court shall now issue an Opinion.

## **DISCUSSION**

Federal Rule of Civil Procedure 42(b) governs a district court's ability to bifurcate a civil action. Rule 42(b) gives this Court broad discretion in determining whether to bifurcate a trial and provides that:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42(b); *see also Hutchinson v. Yadkin Valley Bank & Trust Co.*, 5 F.3d 750 (4th Cir. 1993); *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1990).

3

The decision whether to bifurcate a proceeding is a case-specific inquiry. *See Dawson v. Prince George's County*, 896 F. Supp. 537, 540 (D. Md. 1995). In this case, Plaintiffs' claims against PGCM rest on the theory that PGCM's failure to adequately "train, supervise and discipline its officers has fostered and encouraged the use of excessive force" in violation of 42 U.S.C. § 1983. Section 1983 authorizes a plaintiff to bring a suit for damages against any individual "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983.

Although the Supreme Court has held that a municipality is an individual for the purposes of Section 1983 in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Court emphasized that:

> a municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.
> . . .
> [T]herefore, . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 691, 694 (emphasis in original). Because this Court may not impose vicarious liability under Section 1983, Plaintiffs need to prove two elements to succeed in their Section 1983 claim against PGCM. First, Plaintiffs must establish the existence of a constitutional violation, and, second, Plaintiffs must show that those who inflicted the injury acted pursuant to a PGCM policy or custom. In short, Plaintiffs' case against PGCM depends on their ability to show that Defendant Officers

violated Huddleston's constitutional rights. *See Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised"); *Dawson*, 896 F. Supp. at 540 (Plaintiff's "claims against the County hinge on his ability to show that [an] 'active' Defendant . . .violated his constitutional rights"); *Marryshow v. Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) (same).

Furthermore, in their case against PGCM, Plaintiffs will have to show that the constitutional violations, if any, were proximately caused by a policy, custom, or practice of PGCM. *Monell*, 436 U.S. at 691-94. To make such a showing, Plaintiffs will present evidence of all prior incidents of police brutality. Defendant Officers may not have had any involvement in these incidents. As this Court has noted previously, this type of evidence would rarely be admissible against the individual or "active" defendants because the prejudicial effect of the evidence would far outweigh its probative value. *See Dawson*, 896 F. Supp. at 540; *Marryshow*, 139 F.R.D. at 320; *see also* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice").

Because of this danger of prejudice as well as the derivative nature of Plaintiffs' Section 1983 claims against PGCM, this Court will grant the Motion to Bifurcate and Stay Discovery, but only with respect to Plaintiffs' *Monell* claims.

**CONCLUSION**

This Court finds that conducting a separate trial for the Section 1983 claims against PGCM will serve the interests of convenience, the avoidance of prejudice, and judicial economy, and, therefore, this Court will GRANT the Motion to Bifurcate and Stay Discovery [192]. An Order consistent with this Opinion will follow.

Date:  November 15, 2005                                /s/
                                       Alexander Williams, Jr.
                                       United States District Court